UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFONZO LEE NEWELL,

      Petitioner,

v.                                          CASE NO. 2:11-cv-10030
                                          HONORABLE VICTORIA A. ROBERTS

ROBERT NAPEL,

      Respondent.
_____/

**OPINION AND ORDER
GRANTING THE MOTION FOR EQUITABLE TOLLING,
GRANTING THE MOTION TO AMEND,
DENYING THE MOTION FOR BOND,
DENYING THE HABEAS CORPUS PETITION,
DENYING THE MOTION FOR A STAY,
GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Pending before the Court is petitioner Alfonzo Lee Newell's *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner also filed a "Pleading for Bail Bond," which the Court construes as a motion for release on bond. Additionally, Petitioner filed a motion for equitable tolling of the statute of limitations, a motion to amend the habeas petition, and a motion to hold the habeas petition in abeyance.

Petitioner challenges his plea-based conviction for one count of first-degree criminal sexual conduct. He alleges that the trial court abused its discretion by denying his motion to withdraw his plea. He also contends that his trial attorney was ineffective, that the state district court abused its discretion when it denied his request to waive the preliminary examination, and that the sentencing guidelines were incorrectly scored. The Court finds no merit to these claims. Therefore, the motion for equitable tolling and

motion to amend are granted, but the habeas petition, motion for bond, and motion to hold the petition in abeyance are denied.

## I. Background

### A. The State Court Proceedings

Petitioner was charged with three counts of first-degree criminal sexual conduct in Wayne County, Michigan. The charges arose from allegations that Petitioner sexually penetrated his fifteen-year-old daughter three times. On November 1, 2006, Petitioner pleaded no contest to one count of criminal sexual conduct. *See* Mich. Comp. Laws § 750.520b(1)(b) (sexual penetration of a person at least thirteen years of age, but less than sixteen years of age). In return, the prosecutor dismissed the other two counts of first-degree criminal sexual conduct. The parties also agreed to a sentence of eight to twenty years in prison.

At the sentencing on November 21, 2006, defense counsel informed the trial court that Petitioner wanted to withdraw his plea because he was innocent and dissatisfied with the plea and sentencing agreement. Petitioner personally informed the trial court that he had been trying to go to trial for four months. The trial court noted that it had given Petitioner "plenty of time to decide what he wanted to do" and that, "in the end he decided what he wanted to do . . . ." (Tr. Nov. 21, 2006, at 4.) The court denied Petitioner's motion after concluding that there was no basis to withdraw the plea. The court subsequently sentenced Petitioner to eight to twenty years in prison. Petitioner received 215 days credit for time served awaiting a final disposition of his case.

In a delayed application for leave to appeal, Petitioner argued through counsel that the trial court abused its discretion when it denied his motion to withdraw the plea.

The Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. *See People v. Newell*, No. 282151 (Mich. Ct. App. Dec. 28, 2007).

Petitioner raised the same claim and two new issues in the Michigan Supreme Court. The new issues alleged ineffective assistance of counsel and insufficient evidence (innocence). The Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Newell*, 480 Mich. 1191 (2008) (table).

### B.  The Federal Court Proceedings

Petitioner signed his habeas corpus petition on December 7, 2010, and filed the petition with the Clerk of the Court on January 4, 2011. The heading for Petitioner's claim alleges that Petitioner's plea was unlawfully induced and involuntary. In his statement of facts, Petitioner also asserts a claim of ineffective assistance of counsel. And in an attachment to the petition, Petitioner indicates that he wants to pursue the matter of the state district court's abuse of discretion in refusing to waive the preliminary examination.

Petitioner filed his motion for equitable tolling with his habeas petition. In his motion, he concedes that his habeas petition is untimely. *See* 28 U.S.C. § 2244(d) (establishing a one-year statute of limitations for state prisoners' habeas corpus petitions under 28 U.S.C. § 2254). He asks to have the one-year statute of limitations equitably tolled on the ground that he submitted his habeas petition to a correctional employee for mailing to the Court on April 17, 2009. He claims that he never received a response from the Court.

On July 12, 2011, the State filed an answer to the habeas petition through

counsel. The State argues that the habeas petition is barred from review by the statute of limitations, that Petitioner's challenge to his plea lacks merit, and that Petitioner did not exhaust state remedies for his allegations about trial counsel.

Petitioner replied to the State's answer by filing a motion for a stay of this action. He states that he wants to return to state court and to exhaust additional state remedies for his trial counsel claim.

Two weeks after Petitioner filed his motion for a stay, he filed the pending motion to amend his habeas petition. His motion includes additional facts in support of his claims. He also appears to add a new claim regarding the scoring of offense variables four and eleven of the Michigan sentencing guidelines.

The Court determines that Petitioner's claims lack merit. Furthermore, the exhaustion-of-state-remedies rule is not a jurisdictional requirement. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). Nor is the statute-of-limitations defense jurisdictional. *Holland v. Florida*, __ U.S. __, __, 130 S. Ct. 2549, 2560 (2010) (citing *Day v. McDonough*, 547 U.S. 198, 205 (2006)). And it would be an abuse of discretion to grant a stay for an unexhausted claim that is "plainly meritless." *Rhines v. Weber*, 544 U.S. 269, 277 (2005). The Court therefore denies the motion for a stay and excuses the alleged failure to exhaust state remedies or to comply with the statute of limitations. The Court proceeds to address the merits of Petitioner's claims, using the following standard of review.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011). Pursuant to § 2254, state prisoners are not entitled to the writ of habeas corpus unless the state court's adjudication of their claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, 632 F.3d 301, 308 (6th Cir. 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

Although both state appellate courts issued one-sentence orders denying leave to appeal in this case, the Supreme Court stated in *Richter* that, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. Petitioner raised his claim about the voluntariness of his plea in both state appellate courts, and he raised his ineffective assistance claim in the Michigan Supreme Court. Neither appellate court declined to review the claims on the basis of a procedural error. The Court therefore presumes that the state appellate court orders were adjudications on the merits of those claims and that the deference due under § 2254(d) applies here.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786. To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on a claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

### III. Discussion

### A. The State District Court's Rulings

Petitioner alleges in an attachment to his petition that the state district court abused its discretion when the court denied Petitioner's request to waive his preliminary examination and then bound Petitioner over for trial as charged. Because Petitioner did not present this claim to the state courts, there has been no adjudication on the merits, and the Court's review is *de novo*. *Dorn v. Lafler*, 601 F.3d 439, 442 (6th Cir. 2010).

The claim lacks merit because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process." *Tollett v. Henderson,* 411 U.S.

6

258, 267 (1973). Consequently,

> [w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759 (1970)].

*Id*. Stated differently,

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989). Pursuant to *Broce* and *Henderson*, Petitioner waived his challenge to the state district court's ruling when he pleaded no contest.

### B. The Sentencing Guidelines

To the extent that Petitioner raises a new claim regarding the scoring of the Michigan sentencing guidelines, his claim lacks merit because the trial court's "alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and *Rose v. Hodges*, 423 U.S. 19, 21-23 (1975) (*per curiam*)).

Even if Petitioner's claim were cognizable on habeas review, he was sentenced

pursuant to a plea and sentencing agreement, which called for a sentence of eight to twenty years. "Generally, a defendant who voluntarily and understandingly entered into a plea agreement that included a specific sentence waives appellate review of that sentence." *People v. Billings*, 283 Mich. App. 538, 500 (2009) (citing *People v. Wiley*, 472 Mich. 153, 154 (2005)). For both of the reasons stated, the Court rejects Petitioner's claim about the sentencing guidelines.

### C. The Plea

Petitioner alleges next that the trial court abused its discretion when it denied his motion to withdraw the no-contest plea. Petitioner contends that his plea was involuntary and unlawfully induced. He asserts that he is innocent, that he reluctantly pleaded no contest, and that his attorney persuaded him to consider the plea offer so that he would get out of prison before he turned fifty years of age.

#### 1. Clearly Established Federal Law

"The longstanding test for determining the validity of a guilty plea" and, by extension, a no-contest plea, "is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Because a guilty or no-contest plea involves a waiver of constitutional rights, it must be a voluntary, knowing, and intelligent act, which is "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748 (1970). For a plea to be valid, the defendant must appreciate the consequences of his plea, waive his rights without being coerced, and understand the rights that he is surrendering. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir.

2009), *cert. denied*, __ U.S. __, 130 S. Ct. 3322 (2010).  The defendant must also be aware of the maximum penalty for his crime and understand the essential elements of the crime.  *Id.* at 408-09.  The voluntariness of a plea is determined by considering all the relevant circumstances surrounding the plea.  *Brady*, 397 U.S. at 749.

### 2.  Application

The plea agreement in this case was explained on the record at the plea proceeding.  The trial court also informed Petitioner that the maximum penalty for his crime was life imprisonment.  Petitioner stated that no promises were made to him, other than what was stated in the written settlement offer, which he signed.  The trial court then enumerated the rights that Petitioner was waiving, and Petitioner stated that he understood his rights.

When Petitioner was asked whether anyone had threatened him or influenced him to waive his rights, Petitioner said that he felt threatened by the State.  But when the trial court said that any threats or promises had to come from a person, Petitioner said that no one had threatened him, influenced him, or promised him anything to induce him to give up his rights.  The trial court subsequently asked Petitioner whether there was anything about the proceedings that he did not understand.  Petitioner responded, "No."  He said that he wanted to "move forward" and "get this over with."

Petitioner subsequently stated that he did not agree with the proceeding or believe that it was fair.  He also stated that he accepted responsibility, but not for eight years, and that he felt obligated to accept the plea offer because he could not get a better one.  When the prosecutor said that Petitioner would have to register as a sex offender for twenty years, Petitioner said that he would rather go to trial.

The trial court then explained that Petitioner could either submit himself to the court for the no-contest plea or go to trial. The court subsequently asked Petitioner one more time whether he wanted to submit himself to the court for the no-contest plea. Petitioner responded, "Okay." This comment ended the colloquy between the trial court and Petitioner.

Petitioner's comments at the plea were somewhat equivocal. He balked at going to prison for eight years and registering as a sex offender for twenty-five years. On the other hand, he accepted responsibility for his conduct and he implied that he wanted to resolve the matter by pleading no contest. And his comment that he agreed to the plea offer because he could not get a better one suggests that he wanted a shorter sentence, not a trial. His desire to waive the preliminary examination, *see* Tr. May 4, 2006, at 3, is another indication that he probably wanted to avoid a confrontational situation in which his daughter would testify against him.

Despite his misgivings about the sentence, Petitioner ultimately agreed to plead no contest, and the record indicates that he did so with sufficient awareness of all the relevant circumstances and the likely consequences. The Court therefore rejects Petitioner's claim that his no-contest plea was involuntary and unlawfully induced.

### D. Trial Counsel

The Court construes the habeas petition to include a claim of ineffective assistance of trial counsel. Petitioner alleges that his trial attorney's lack of familiarity with his case and refusal to investigate, move for discovery, or present an adequate defense amounted to ineffective assistance.

### 1. Clearly Established Federal Law

To prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This same two-part test applies to ineffective-assistance claims arising from the plea process. *Hill*, 474 U.S. at 47. The Supreme Court has explained the first prong of the test as follows: when a defendant "enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *Richardson*, 397 U.S. at 771).

The second or "prejudice" prong of the *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. The defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

*Id.*

### 2. Application

Petitioner alleges that his attorney was not familiar with his case and refused "to

investigate, motion [sic] for recovery of articles missing from discovery, or present an adequate defense . . . ." Pet., Attach. C.  Petitioner has not specified what additional investigation his attorney could have conducted.  Nor has he provided examples of his attorney's alleged unfamiliarity with the case.  Although he does state that the medical examiner's report was missing from the discovery package and that defense counsel should have moved to recover the missing item, he has not summarized the conclusions of the report, nor shown how the report would have helped him.

As for the failure to present an adequate defense, Petitioner implies that his attorney should have pursued a defense of actual innocence based on his contention that the complainant voluntarily got on top of him and sexually aroused him while he was sleeping.  The complainant, however, testified at the preliminary examination that Petitioner had suggested having sex with her on or about April 20, 2002, while she was visiting Petitioner at his house.  She identified a written note that the two of them had passed back and forth as a means of communicating because she was so uncomfortable talking about the matter.  She went on to say that Petitioner had vaginal intercourse with her three times.  She spent the night there, and on the following day, Petitioner left the house.  She then called her brother.  She did not tell him about the incident with Petitioner because Petitioner had told her what would happen if she told anyone.  She left the house and walked about thirty minutes before catching a bus because she was afraid that Petitioner would notice her if she waited for the bus near his house.  Once she got home, she disclosed the incident to her mother even though Petitioner had said her mother "would go crazy" if she knew what happened.  Her mother called the police and an ambulance.  She (the complainant) was examined at

the hospital and spoke with police officers there.  (Tr. May 4, 2006, at 5-31.)

Sperm cell fractions (semen) were found on the complainant, and tests indicated that Petitioner could not be excluded as the donor.  (Tr. Nov. 1, 2006, at 16.)  Given this evidence, as well as, the written note in which Petitioner propositioned the complainant and the complainant's disturbing testimony, it is unlikely that a claim of innocence would have succeeded at trial.

Furthermore, Petitioner concedes that he got "an extremely favorable plea agreement."  Pet., Attach. C.  The sentencing guidelines called for a minimum sentence of eleven years, three months, to eighteen years, nine months.  (Tr. Nov. 1, 2006, at 4.)  Petitioner had a criminal record, and if he had been convicted following a trial and then sentenced as a habitual offender, the guidelines would have been even higher.  *Id*.

The Court concludes that defense counsel's advice to plead no contest was well within the range of competence demanded of attorneys in criminal cases.  Therefore, defense counsel's performance was not deficient, and Petitioner has failed to establish that defense counsel provided constitutionally ineffective assistance.

### IV.  Conclusion

The record indicates that Petitioner's no-contest plea was "the product of a free and rational choice," and that he "was represented by competent counsel whose advice was that the plea would be to [Petitioner's] advantage."  *Alford*, 400 U.S. at 31.  The Court therefore finds no merit in Petitioner's claims.  The Court also finds that the state appellate courts' rejection of Petitioner's claims did not result in decisions that were contrary to, or an unreasonable application of, Supreme Court precedent.  Accordingly, the motion for equitable tolling [dkt. #3] and motion to amend [dkt. #15] are **GRANTED**,

but the petition for writ of habeas corpus [dkt. #1] is **DENIED**. The motion for a stay [dkt. #14] and the motion for bond [dkt. #9] likewise are **DENIED**.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

Reasonable jurists could debate the Court's resolution of Petitioner's claim about the voluntariness of his plea or conclude that the issue deserves encouragement to proceed further. The Court therefore **GRANTS** a certificate of appealability on Petitioner's challenge to the voluntariness of his plea. The Court declines to issue a certificate of appealability on Petitioner's claims about trial counsel, the state district court's rulings, and the scoring of the sentencing guidelines. Petitioner nevertheless may proceed *in forma pauperis* in the Court of Appeals because he was allowed to proceed *in forma pauperis* in the District Court and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(3)(A).

                                              /s/ Victoria A. Roberts
                                              Victoria A. Roberts
                                              United States District Judge

Dated: August 25, 2011

The undersigned certifies that a copy of this document was served on the attorneys of record and Alfonso Lee Newell by electronic means or U.S. Mail on August 25, 2011.

S/Carol A. Pinegar
Deputy Clerk

15